IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDOLPH VINE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-895-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 16), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, the Plaintiff's *Motion for Summary Judgment* (Doc. 17) is **GRANTED** to the extent set forth below, and the Defendant's *Motion for Summary Judgment* (Doc. 19) is **DENIED**.

**I.       BACKGROUND**[1]

**A.     Procedural History**

Randolph Vine (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act. In July 2007, Plaintiff filed for SSI and DIB, claiming that he had been disabled since January 1, 2005, due to heart disease, problems with his lower back, and high blood pressure (which resulted in shortness of breath), left arm pain, an irregular heartbeat, dizziness, and an inability to sit or stand for long

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

periods of time. (Tr. at 15, 98-102, 126-27). His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 23-37, 44-49, 62-65). He personally appeared *pro se* and testified at a hearing held in February 2009. (Tr. at 23-37). In June 2009, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 42). In March 2010, the Appeals Council denied Plaintiff's counseled request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1, 6-8, 20). Plaintiff timely appealed the Commissioner's decision to the United States District Court under 42 U.S.C. § 405(g).

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was 52 years old at the time of the administrative hearing and had an eleventh-grade education. (Tr. at 29). He had past relevant work history as a customer service representative, groundskeeper, painter, and sandblaster. (Tr. at 28).

    **2.    Limited Medical Evidence Before the ALJ**

In 2003, Plaintiff was in a car accident and suffered neck and back injuries. (Tr. at 98, 270, 272, 278). In 2005, he was imprisoned for a probation violation for two years. (Tr. at 25-26). Due to his car accident injuries, prison officials limited him to ground floor rooms and lower bunks and restricted him from working around machines with moving parts and any work that involved squatting. (Tr. at 199). In early 2007, Plaintiff began experiencing numbness in the fourth and fifth fingers of his right hand, with shooting pains radiating to his forearm, for which he received ibuprofen. (Tr. at 189). Prison medical staff diagnosed Plaintiff with cervical strain and decreased function of the right fourth and fifth fingers. (Tr. at 188-89).

Soon after his release from prison in July 2007, Plaintiff went to the emergency room for lumbar pain, and an x-ray revealed mild degenerative disc disease, but no acute fracture or subluxation. (Tr. at 204, 211). His blood pressure at admission was 144/90. (Tr. at 204). Plaintiff was diagnosed with acute low back pain, prescribed pain medication and muscle relaxers that could cause dizziness, and discharged the next day. (Tr. at 204, 209, 225-26).

### 3. Hearing Testimony

The ALJ held a hearing in February 2009 at which Plaintiff appeared *pro se*. (Tr. at 27). After briefly questioning Plaintiff about his criminal history, the ALJ informed him that he had a right to counsel, explained how contingency fee agreements worked, and told him that if he had no money he might qualify for free legal aid representation. (Tr. at 27). Plaintiff said that he would like to proceed with the hearing without representation. (Tr. at 27). The ALJ asked why Plaintiff had a cane because she did not know of any reason for it, and he told her that he got it when he went to Parkland Hospital in 2008 for back pain. (Tr. at 27-28). The ALJ noted that Plaintiff had earned money from 1993 to 1996 and asked if he had gotten involved in drugs in 1997 because his income declined and he had not earned much since. (Tr. at 28). Plaintiff told the ALJ that he got a stent for his heart problems during that time after suffering a heart attack. (Tr. at 28-29). He also informed the ALJ that he was not taking medicine for his back pain because it was not doing any good and he was instead getting steroid shots. (Tr. at 29). The ALJ questioned Plaintiff about why he could not work at a job with a sit/stand option, and Plaintiff stated that his high blood pressure caused him to get weak and dizzy and see spots. The ALJ asked why Plaintiff did not take his blood pressure medicine and when he said he did, the ALJ responded that she had no reason to believe it did not work. Plaintiff responded that the

3

medicine did work, but he still saw spots. (Tr. at 30). Plaintiff stated that he was on medical leave while he was imprisoned and did not work at all. (Tr. at 30).

The ALJ called a vocational expert (VE) who testified that Plaintiff could not perform his past relevant work, but he could be a tollbooth collector, a change booth cashier, and parking lot attendant, all of which were in the light exertional category and unskilled in nature. (Tr. at 34-36). The VE surmised that approximately half of the available jobs would allow a sit-stand option. (Tr. at 36).

## C.  The ALJ's Findings

In June 2009, the ALJ found that Plaintiff had the severe impairments of coronary artery disease and chronic low back pain, but he did not have an impairment or combination of impairments that met or medically equaled one of the Listings. (Tr. at 17) (citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007)). The ALJ stated that she had considered all of the impairments under the standard of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and that Plaintiff had the residual functional capacity (RFC) to do light work, except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and he had to have a sit/stand option every half hour. (Tr. at 17-18). The ALJ further noted that while Plaintiff's impairments reasonably could be expected to cause his symptoms, his statements concerning the severity and limiting effects of the symptoms were not credible because they were inconsistent with his RFC. (Tr. at 19). The ALJ believed that Plaintiff had not sought treatment at a spinal clinic after his July 2007 hospitalization even though it had been recommended, which suggested to her that his medical problems were not as serious as he alleged. (Tr. at 19-20). She also stated that there was no medical evidence in the record to support Plaintiff's testimony that he had gotten medical

4

treatment and a cane at Parkland Hospital, nor was there any recent medical notation about Plaintiff's heart condition or complaints of dizziness. (Tr. at 20).

Next, the ALJ noted that Plaintiff's reported activities of daily living were very limited, but that could not be objectively verified and it was difficult to attribute his limitations to his medical problems given the lack of medical evidence in the record. (Tr. at 20). While Plaintiff could not perform his past relevant work, the ALJ concluded that Plaintiff could do unskilled, light work consistent with the limitations set forth during the hearing. (Tr. at 22).

D.   **Administrative Appeal Proceedings**

During the administrative appeal, Plaintiff obtained counsel who supplemented the record with additional medical evidence that showed the following: Plaintiff went to the emergency room a second time in July 2007, and an x-ray revealed bilateral pars defects (degeneration or deficient development of part of the vertebra), grade 1 anterolisthesis of the lower back (slippage of the upper vertebral body forward on the one below, with grade 1 being the mildest at 20% slippage), and minimal loss of disc space. Plaintiff had decreased motor function in his hips and knees. (Tr. at 242, 266, 270, 273). In July 2007, Dr. Anna Allread noted that Plaintiff had difficulty walking, prescribed a walker and pain medication for him, and referred him to physical therapy. (Tr. at 270-71, 275).

At a spine clinic in September 2007, Dr. Sreenadha Vattam noted that Plaintiff's cervical and lumbar range of motion were diminished, he had decreased motor function in his hips bilaterally, his deep tendon reflexes were diminished, and his right fifth finger had decreased flexion and extension. (Tr. at 278-79). He had a positive straight leg raise test on his right side, decreased sensation on his right cervical spine, and limited ability to heel-toe walk. (Tr. at 228,

279). Dr. Vattam diagnosed Plaintiff with right L5-S1 radiculopathy (disorder of the spinal nerve roots), L5-S1 anterolisthesis, C8-T1 radiculopathy, and ulnar entrapment (compressed nerve) at the elbow. (Tr. at 279). Plaintiff was prescribed more medication which could cause dizziness. (Tr. at 228, 234-35).

In October 2007, MRIs of Plaintiff's spine revealed that he had (1) congenital narrowing of the central canal of the cervical spine with concomitant discogenic degenerative changes further narrowing the cervical spinal canal, (2) degenerative changes in the lumbar spine, including a disc protrusion, and (3) bilateral spondylolysis (degeneration of a portion of the vertebra) with grade I anterospondylolisthesis of L5 on S1. (Tr. at 283). In November 2007, a physical therapist diagnosed Plaintiff with gait impairment secondary to back pain and prescribed him a cane instead of a walker at his request. (Tr. at 265). In December 2007, Plaintiff was diagnosed with "right moderate ulnar neuropathy at the elbow with demonstration of motor and sensory involvement" and was referred to an orthopedist. (Tr. at 284-85).

In February 2008, Dr. Amy H. Phelan reviewed diagnostic study results and observed that Plaintiff had a positive right straight leg raise test. (Tr. at 261-62). Dr. Phelan diagnosed him with right radiculopathy, right ulnar neuropathy, and congenital cervical narrowing. (Tr. at 262). She referred Plaintiff to neurosurgery and an orthopedic specialist. (Tr. at 262). In March 2008, Dr. Kimberly Mezera, a hand surgeon, examined Plaintiff and found that he had decreased sensation in the ulnar aspect of his right finger and the entire small finger, and weak abduction and flexion in his fourth and fifth digits. (Tr. at 252-53). Plaintiff was extremely sensitive at the cubital tunnel of his right elbow even to light pressure, and Dr. Mezera diagnosed him with cubital tunnel syndrome. (Tr. at 252-53). Dr. Mezera administered a lidocaine injection and

referred Plaintiff to occupational therapy. (Tr. at 252-53).

In June 2008, Dr. Christopher Madden diagnosed Plaintiff with low back pain due to lumbar degenerative changes and stenosis (stricture of the lumbar canal) and referred him to physical therapy. (Tr. at 243-44). However, he noted that Plaintiff had full strength in and moved all of his extremities well and walked with a slow but steady gait. (Tr. at 243). Dr. Madden also found that Plaintiff's straight leg raise test was negative, although he had significant tenderness in his lower back, was unable to bend over to touch his toes, and could not hyperextend. (Tr. at 243). Dr. Madden further noted that Plaintiff had a history of hypertension. (Tr. at 243). The Appeals Council stated that it had considered the additional medical evidence and counsel's brief, but found that the information provided did not justify changing the ALJ's ruling. (Tr. at 6-10).

## II. ANALYSIS

A. **<u>Legal Standards</u>**

    1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes

the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the SSI program are identical to those governing the determination of eligibility under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id. passim.*

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.     Issues for Review**

Plaintiff raises five issues for review, some of which contain sub-issues. Although the Court need not address all of the issues in reaching a decision, as will be discussed more fully below, the issues Plaintiff presents are as follows:

1. Whether the ALJ erred by failing to (a) request a full record of Plaintiff's medical treatment, (b) advise Plaintiff of his right to counsel, and (c) adequately question Plaintiff at the

administrative hearing. Further, whether the Appeals Council ignored the new medical evidence Plaintiff's counsel submitted. (Doc. 17 at 9-14).

2. Whether the ALJ properly applied the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and, if so, whether she adequately indicated Plaintiff's impairments. (Doc. 17 at 14-16).

3. Whether the ALJ made sufficient findings under the Listings at step three as required by *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), and whether the new evidence he submitted to the Appeals Council indicates that he likely could satisfy Listing 1.04A. (Doc. 17 at 16-18).

4. Whether the ALJ improperly refused to give controlling weight to Plaintiff's prison treating source physicians. (Doc. 17 at 19-21).

5. Whether the ALJ's step five findings were supported by substantial evidence. (Doc. 17 at 22-24).

In regard to Issue 1, Plaintiff argues that the ALJ failed to obtain important medical records even though she was aware that some records were missing and Plaintiff was not counseled. (Doc. 17 at 9-11). Additionally, Plaintiff points out that the ALJ did not properly question him about his medical condition, the effectiveness of his treatment, and how his medical problems affected his daily living activities. (*Id.* at 12-13). Further, Plaintiff argues that the ALJ did not properly apprise him how an attorney could assist him, nor did she ask whether he had a meaningful opportunity to retain counsel. (*Id.* at 13-14). Finally, he claims that the Appeals Council ignored the newly submitted evidence which disproved the ALJ's belief that Plaintiff had not sought prescribed treatment. (*Id.* at 11-12).

Defendant contends that the missing records were before the Appeals Council, which denied Plaintiff's appeal after stating that it had considered the additional evidence. (Doc. 20 at 6). Defendant also claims that the ALJ adequately questioned Plaintiff about his past relevant work, why he stopped working, and his medical limitations. (*Id.* at 7). Further, Defendant argues

that there was no harmful error in regard to Plaintiff's *pro se* status because the Commissioner repeatedly provided Plaintiff with written notice that he had a right to counsel. (*Id.* at 7-9).

Plaintiff replies that he testified to the existence of other medical records, but instead of attempting to get them, the ALJ found that there was no evidence to support his claims. (Doc. 23 at 2). Further, Plaintiff points out that the administrative hearing was not thorough, as Defendant argues, because it only lasted 14 minutes, and the ALJ did not question Plaintiff about his hand limitations which were evident in the records before her, nor did she request medical documentation to complete the record as to Plaintiff's need for a cane. Finally, he claims that he was not adequately apprised of his right to counsel because the notices sent to him were insufficient. (*Id.* at 2-3).

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The regulations instruct the ALJ to develop a claimant's complete medical history for at least the 12 months preceding the benefits application and to make every reasonable effort to get medical reports from the claimant's own medical sources. 20 C.F.R. § 404.1512(d). This duty to fully develop the record is heightened when the claimant is *pro se*. *Brock*, 84 F.3d at 728. An ALJ may satisfy this heightened duty by asking the claimant about his medical condition, the effectiveness of treatment, how the claimant's daily routine has been affected by his medical problems, his ability to perform various tasks, and by inviting the claimant to include anything else in the record. *See Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 704-05 (5th Cir. 1986). Even a claimant's failure to mention specific impairments at the hearing is not dispositive of the ALJ's obligation to consider all of the

medical evidence in the record and any impairments that have significant supporting evidence. *See Williams v. Astrue*, 2010 WL 517590 at *6 (N.D. Tex. 2010) (Fitzwater, C.J.). An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby. *Brock*, 84 F. 3d at 728. To establish prejudice, the claimant need only show that he "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984).

It is clear in this case that the ALJ failed to satisfy her heightened duty of obtaining known medical evidence to which Plaintiff referred during the hearing. (Tr. at 27-30). This evidence would have demonstrated that Plaintiff was prescribed a cane, was given medication that was known to cause dizziness, was getting steroid shots for his pain, had imaging tests which demonstrated objectively his back and neck problems, had decreased functioning in his back, legs, and hand, had gone to a spinal clinic for further treatment contrary to the ALJ's belief, and had a history of high blood pressure. (Tr. at 228, 234-35, 242-243, 252-53, 261-62, 265, 266, 270-71, 273, 275, 278-79, 283, 284-85).

Further, there is ample basis from which the Court can conclude that the ALJ might have rendered a different decision if she had been aware of the extensive medical evidence that was available from Plaintiff's treating physicians. *Kane*, 731 F.2d at 1219-20. In particular, the evidence demonstrates that Plaintiff had objectively verifiable reasons for his pain, needed a prescription cane to walk, had positive diagnostic tests on several occasions in relation to his pain, often had decreased motor function, and at least intermittently took medicine that could cause his dizziness. While the outcome of the case on remand is by no means certain, the ALJ should have obtained and considered this evidence. Her failure to do so means that her opinion

that Plaintiff was not disabled is not supported by substantial evidence. *Brock*, 84 F.3d at 728. Accordingly, the Court must reverse and remand this cause for further proceedings.

In light of the Court's findings that a remand is required because the ALJ did not have before her all of the necessary medical evidence, Plaintiff's remaining arguments under Issue 1 are moot insofar as he complains about his lack of counsel and the Appeals Council's failure to address his new evidence. Further, while the Court need not address Issues 2 through 5 in light of the above findings, the undersigned does note that a preliminary review of Issues 3 and 4 suggests that Plaintiff's arguments may be meritorious, and the ALJ should proceed accordingly on remand. *See Audler,* 501 F.3d at 448 (noting that the ALJ's failure to identify the listed impairment for which the claimant's symptoms failed to qualify or explain how she reached that conclusion rendered the opinion beyond meaningful review); *Newton v. Apfel*, 209 F.3d 448, 453, 455-56 (5th Cir. 2000) (holding that an ALJ may reject a treating physician's opinion only after performing the six-step analysis in 20 C.F.R. § 404.1527(d)(2), unless the treating physician's opinion is conclusory, unsupported, or contradicted by another treating doctor).

### III. CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary Judgment* (Doc. 17) as set forth herein and **DENIES** Defendant's *Motion for Summary Judgment* (Doc. 20).

**SO ORDERED** on November 18, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE